LUDAM A. BARGIE

*vs.*

UNITED STATES.

AT LAW. DECIDED JANUARY 8, 1861.

WRIT OF ERROR TO THE CRIMINAL COURT.

*Indictment for False Pretences.*

1. An indictment under the penitentiary Act of March 2, 1831, need not show whether the prosecutor paid the money on the draft and endorsement or not. The false pretence of the prisoner was complete when he fraudulently obtained the endorsement of the prosecutor; by that endorsement the prosecutor contracted an obligation in writing conditional in its terms to pay the money named in the draft to the *bona fide* holder of it.

2. In an indictment under the statute it is superfluous to call the offence by its general and uncertain statutory name if the offence is set out *in hace verba*, so that the Court can see and determine whether the instrument is such a one as comes within the terms of the statute.

DANIEL RATCLIFF and JOHN E. NORRIS for the prisoner.

ROBERT OULD, United States District Attorney for the United States.

There were two counts in the indictment, the substance of which will be found in the opinion of the Court.

The jury brought in a verdict of guilty.

The prisoner, through his counsel, moved that judgment upon the verdict be arrested for the following reasons, viz:

1st. The paper writing, called a draft for $120, which is a foundation of the alleged false pretense in this indictment, is not fully set out in its legal effects, which is necessary to render the indictment good and sufficient in law.

2nd. It is charged in the indictment that the paper writing, called a draft, upon which the prisoner obtained the money of the prosecutor was not a good and available draft, and the indictment does not allege that the said paper or draft was ever presented to the drawee, nor does he allege a reasonable excuse why it was not presented.

3d. If it is necessary to prove on the trial the presentation of the draft to the drawee, or aver an excuse for not presenting the same, it is necessary to allege these facts in the indictment, which allegation is not contained in the indictment.

4th. It is not averred in the indictment that the prosecutor, Abraham Chambers, was legally liable for the money alleged to have been obtained on a false pretense, which is necessary to be averred to make the indictment good.

Motion in arrest of judgment overruled.

Opinion by the Court through Judge James Dunlop:

This is a writ of error to the judgment of the Criminal Court, upon an indictment against the prisoner for false pretenses charged in two counts, upon which a verdict of guilty was rendered by the jury on both counts.

No bill of exceptions was taken on the trial below, and we cannot therefore entertain or consider the argument addressed to us here, and there was no evidence on the trial in that Court to maintain the allegation that the prisoner obtained from the prosecutor, Chambers, $120, as charged in the first count of the indictment.

The verdict concludes that question, and we must assume here that all the averments and allegations in both counts were proved as laid.

The writ of error brings before us for review only the sufficiency of the indictment.

The clause of the Act of Congress of March 2, 1831, upon which it is framed is in these words: "Section 12, That every person duly convicted of obtaining by false pretenses any goods or chattels, money, bank note, promissory note or *any other instrument in writing* for the *payment* or *delivery* of money, or other valuable thing," shall suffer imprisonment, &c.

It will be observed by the terms of the statute that the *obtaining* by false pretenses, "any instrument in writing for the *payment* or *delivery of money* or other valuable thing," is itself *an offence*, whether the money or other valuable thing be paid or delivered or not by the party charged or bound in the written instrument so to do. In other words, to consummate the crime it is not necessary to aver or prove that the maker of the writing obligatory has paid or delivered the money or valuable thing stipulated in the writing. It is enough that he is charged and liable so to pay or deliver.

The gist of the 1st count is that the prisoner on the 2d of August, 1859, at the County of Washington, in this District, with intent to cheat and defraud one Benjamin Chambers of his moneys, did falsely pretend to said Chambers that he was authorized by one Wm. Francis McClean to draw upon him for about the sum of $120, and did then produce to said Chambers a certain paper writing, purporting to be a sight draft upon Wm. Francis McClean, for the payment, through the Citizens' Bank of New Orleans, to the order of Benjamin Chambers, of the sum of $120, with the word "accepted" written upon the back of said draft, and that the same was then and there a good, genuine and available draft for the payment of $120. The 1st count then negatives these pretenses, with others set forth in it, avers them to be false, and so well known to be false by the prisoner and are found to be false by the verdict. The count concludes by averring that by colour and means of said false pretenses the prisoner did then and there unlawfully, knowingly and designedly *obtain* from said Benjamin Chambers *the sum of $120* of the moneys

and effects of the said Benjamin, with the intent to cheat and defraud the said Benjamin Chambers.

There can be no doubt this is a good count and charges an offence under the statute, if the false pretenses are set forth in it with sufficient certainty.

The money of Chambers was obtained on a fraudulent draft, which the prisoner was not authorized, and which it is found by the verdict he knew he was not authorized to draw on McLean. Rex *vs.* Jackson, 3 Campbell 370;[1] 2 Russell 307.

It is objected that the count does not allege that the draft was *delivered* to Chambers or was endorsed by him, and that it is not set forth according to its tenor, that is to say *in hace verba*. The count avers that the paper writing, purporting to be the draft, was "then and there produced by the said Ludam A. Bargie to the said Chambers." This averment is in the usual and approved form. See Wharton, Precedents of Indictments and Pleading 540.

It was not needed to aver the endorsement by Chambers; the prisoner is not charged in this count with fraudulently obtaining the endorsement of Chambers; the charge is that by the fraudulent draft the prisoner fraudulently obtained $120 of the money of Chambers.

To constitute the offence it was wholly immaterial whether Chambers endorsed the draft or not. It was not necessary to set out the draft in *hace verba*. "If the pretence be in writing it is not necessary to set it out *in hace verba*, unless some question turn on the form of the instrument; it is sufficient to state the pretence in *substance* as it appears in writing." Archbold's Criminal Practice and Pleading 604.

It was not necessary that the indictment should show how the pretence operated in the ·mind of the party or in what way it was calculated to effect the obtaining the money, it is merely matter of evidence. Hamilton *vs.* Queen, 9 Adol & El. N. S., 277 per Lord Semmans. See also Wharton's Criminal law, 729.

It is also suggested in the reasons, in arrest of judgment, that the count ought to have averred presentment of the draft

[1]Attorney-General *vs.* Morgan.

to the drawer for acceptance, and notice of its dishonor to the prisoner, but it is settled law that a drawer without funds in the hands of the drawee, and who is not authorized to draw, has no right to require of the holder presentment to the drawee for acceptance or payment, or notice to him the drawer of refusal or dishonor. The prisoner in this case having fraudulently drawn the bill, without funds in the drawee's hands, or authority to draw from the drawee, could not claim its acceptance or payment, or expect it to be honored or paid. As he fraudulently drew the bill, he could not claim the right of a *bona fide* drawer in any proceedings against him civil or criminal, no averment of the facts suggested, therefore need have been made in the count or proved on the trial.

We think the pleader has in this count substantially set forth the draft, and that the 1st count is a good count to sustain the judgment of the Criminal Court.

The gist of the 2d count is that the prisoner, with intent to defraud the said Chambers, on the 2d of August, 1859, at the county aforesaid, upon like false pretenses, in substance as charged in the 1st count, and upon the further false pretense that said Chambers would thereby incur no personal pecuniary liability or responsibility, did request and solicit said Chambers to sign his name upon the back of a certain draft or bill of exchange, drawn by said Bargie, on one Wm. Francis McLean, for the sum of $120, dated Washington, D. C., August 2, 1859, and payable at sight to the order of said Benjamin Chambers, which said false pretenses are negatived and averred to be false, and known to the prisoner to be false and fraudulent, by means of which false pretenses the prisoner did, then and there unlawfully, with intent to cheat and defraud said Benjamin Chambers, procure and obtain the signature of said Chambers from said Chambers, to and upon said draft or bill of exchange, for the sum of $120, by the writing of the name of the said Benjamin Chambers, by the name of B. Chambers on the *back* of the said draft or bill of exchange, and beneath the word "accepted;" it then proceeds to set out *in hace verba* the draft and endorsement.

$120.00
                                WASHINGTON, D. C., August 2, 1859.
   "William Francis McLean pay to the order of Benjamin
Chambers, at sight, through the "Citizens" Bank of New
Orleans, La., one hundred and twenty dollars."

                                                L. A. BARGIE.

   And on the back of which said draft or bill of exchange
is endorsed and written the words following, that is to say,
"Accepted B. Chambers."

   The draft and signature so set out for inspection of the
Court, and the signature so averred to be obtained and pro-
cured by the prisoner from Chambers on the back of a negoti-
able draft, is in law an endorsement.   It is a contract in writ-
ing by the endorser Chambers, for the payment to the holder
of the $120 named in the draft.   It is, in the language of the
statute, "An instrument in writing for the payment of
money."

   That the contract of the endorser is conditional and not
absolute, does not, in our judgment, vary the offence charged
against the prisoner.   It is a valuable security, proper to be
and we think meant to be protected by the Legislature.   The
contract of endorsement, though conditional, is still, we
think, an instrument in writing for the payment of money
within the true intent of the 12th section of the Penitentiary
Act.

   If this be the true construction of that Act, then, as we
have before said, it is immaterial whether Chambers paid the
money on the draft and endorsement or not.   The offence of
the prisoner was complete when he fraudulently obtained the
endorsement of Chambers.   By that endorsement Chambers
contracted an obligation in writing, conditional in its terms,
to pay the money named in the draft to the *bona fide* holder
of it.

   The second count, in the conclusion of it, avers that
afterwards, to wit: on the 1st of November, in the year afore-
said, Chambers, by reason of his signature, was obliged to
pay and did pay the said sum of $120 in cash, to his great
damage and against the statute.

If we are right in the construction we have given of the statute, the pleader has performed a work of supererogation in making the last averment.

Supposing the averment, however, to be necessary, it is assailed for its generality and want of precision.   It is objected that the count nowhere charged that the prisoner negotiated the draft after endorsement, and received the money for it; that the liability and obligation of Chambers, the endorser, to pay, ought to have been set out with the same precision as in a declaration in a civil suit against him as endorser to charge him in that capacity; that is to say that presentment on a day certain, and notice of non-acceptance or non-payment on a day certain, should have been averred, so as to show this Court that Chambers was bound and liable in law to pay the money on the draft, and that it ought to have charged to whom, and when Chambers paid the money.  All these objections are met and answered by the Supreme Court of New York in the case of the People *vs*. Stone, 9 Wendall 183, 184, 189 and 190.   The first and second counts in the indictment in that case were held good by that Court, although they were substantially as general as the second count in the indictment before us.

Lastly, it is objected that the prisoner has not been charged in this second count for fraudulently procuring the endorsement of Chambers in the terms and language of the statute; that is to say, if we understand the objection, he ought to have been charged with fraudulently obtaining from Chambers ''an instrument in writing for the payment of money.''   It is true that we have held that an offence under the grade of felony, created by statute, where the offence so created was unknown to the common law, it was sufficient as a general rule to follow the terms of the statute creating the offence.  But this, even in such cases, is not a rule of universal application, and false pretences is one of the exceptions laid down in the books.   Where the language of the statute is so general and vague, as in the case now before us, to give no notice to the accused of any specific instrument in writing for the payment of money, and to what amount, it would be most unjust to him to call him to answer when he could not know

against what to defend himself, and when it would be impossible in any subsequent criminal proceeding for the same offence, to plead in bar a former acquittal or conviction.

In all such cases reasonable legal certainty must be used in the indictment. But we have never said, where the language of the statute is even reasonably certain in defining the offence, that the pleader cannot use other language more specific and more certain to define the same offense, which the language of the statute imparts in more general terms.

In the case now before us, in the second count, "the instrument in writing for the payment of money" alleged to have been fraudulently obtained by the prisoner from Chambers, is set out by the pleader with all the particularity of which it was capable; it is set out *in hace verba*, so that the Court can see and determine whether it is such an instrument as comes within the terms of the statute. Having shown us the thing named with perfect certainty in all its particulars, it is surely superfluous also to call it by its general and uncertain statutory name.

Upon the whole, we think the second count also good, and we affirm the judgment of the Criminal Court.